UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES M. MALONEY,
       Plaintiff,

 - against -

THE COUNTY OF NASSAU, THE POLICE
DEPARTMENT OF THE COUNTY OF NASSAU,
DENIS DILLON, in his official capacity as District
Attorney of the County of Nassau, JOAN P. YALE,
ROBERT SEIDEN, ESQ., JOHN A JOHNSON, in his
official capacity as Commissioner of the State of New
York Office of Children and Family Services, DAVID R.
PETERS, in his official capacity as Director of the State
Central Register of the State of the New York Office of
Children and Family Services, and JOHN DOES No. 1
through 100,
       Defendants.
------------------------------------------------------------------X

**CV 03 4178**

**FIRST AMENDED COMPLAINT**

Case Filed: August 22, 2003

Wexler J.
Orenstein, M.J.

**JURY TRIAL DEMANDED**

  JAMES M. MALONEY, through his attorney, Victor M. Serby, Esq., as and for his first amended complaint against the above-named defendants alleges as follows:

### PARTIES

1. Plaintiff is a natural person, a citizen of the United States, and at all relevant times herein a resident of the State of New York, County of Nassau.

2. Defendant THE COUNTY OF NASSAU is a county of the State of New York, located within the Eastern District of New York.

3. At all relevant times hereinafter mentioned, Defendant THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU was and is an official police force within the State of New York.

4. At all relevant times herein mentioned, Defendant THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU was acting under color of law.

5. At all relevant times herein mentioned, Defendant THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU was <u>not</u> acting under color of law.

6. At all relevant times herein mentioned, Defendant THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU was acting pursuant to official policy.

7. At all relevant times herein mentioned, Defendant THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU was <u>not</u> acting pursuant to official policy.

8. At all relevant times hereinafter mentioned, Defendant DENIS DILLON was and is a natural person and the District Attorney of the County of Nassau, with offices within this District located at Mineola.

9. At all relevant times hereinafter mentioned, Defendant JOAN P. YALE was a natural person and an official of THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU.

10. At all relevant times herein mentioned, Defendant JOAN P. YALE was acting under the color of law.

11. At all relevant times herein mentioned, Defendant JOAN P. YALE was <u>not</u> acting under the color of law.

12. At all relevant times herein mentioned, Defendant JOAN P. YALE was acting pursuant to official policy.

13. At all relevant times herein mentioned, Defendant JOAN P. YALE was <u>not</u> acting pursuant to official policy.

14. At the commencement of this action and at all times hereinafter mentioned, Defendant ROBERT SEIDEN, Esq. was and is a natural person, a citizen of the United States, and a resident of the State of New York, and the County of Nassau.

15. Defendant ROBERT SEIDEN, at all relevant times herein, was an attorney duly registered to practice law in the State of New York.

16. At the commencement of this action and at all times hereinafter mentioned, Defendant JOHN A JOHNSON, was and is Commissioner of the State of New York Office of Children and Family Services, an agency acting under color of state law and pursuant to official policy.

17. At the commencement of this action and at all times hereinafter mentioned, Defendant DAVID R. PETERS, was and is Director of the State Central Register of the State of New York Office of Children and Family Services, an agency acting under color of state law and pursuant to official policy.

18. At all times hereinafter mentioned, Defendants JOHN DOES No. 1 through 100 were natural persons and employees of THE POLICE DEPARTMENT OF THE COUNTY OF

NASSAU acting under color of state law and pursuant to official policy in the course of their employment.

## JURISDICTION AND VENUE

19. This action arises under the Constitution of the United States and is brought pursuant to the provisions of section 1983 of Title 42 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and more specifically under 28 USC § 1343(3) and jurisdiction for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § § 2201 and 2202. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for state and common law claims.

20. Venue is properly placed in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b).

## FACTS

21. On or about August 23, 2000, at about 2:00 p.m., Plaintiff was in his home and observed from an upstairs window of his home, a telephone worker, on a pole, on the curtilage of Plaintiff's home.

22. On or about August 23, 2000, at about 2:00 p.m., Plaintiff had a conversation from within his home with the telephone worker, who refused to identify himself, giving his first name only.

23. On or about August 23, 2000, at about 2:00 p.m. or shortly thereafter, Plaintiff, in order to get a better idea of who the individual was, in case there were subsequent telephone line problems, used a small low-power telescope to observe the telephone worker, training it upon him for one minute or less and then putting it away as soon as the telephone worker, noticed that he was being observed.

24. On or about August 23, 2000, at about 2:01 p.m. or shortly thereafter, when the telephone worker noticed Plaintiff observing him, he demanded to know what it was that Plaintiff had pointed at him.

25. On or about August 23, 2000, at about 2:01 p.m. or shortly thereafter, Plaintiff assured the telephone worker that it was nothing harmful and said, "Don't worry about it."

26. On or about August 23, 2000, at about 2:01 p.m. or shortly thereafter, the telephone worker remained on the platform for another 5-7 minutes, calmly finished his work, closed and latched the feeder box, and then climbed down the pole.
27. Plaintiff remained in his home and the telephone worker drove away.
28. The identity of said telephone worker was later learned to be Michael Cates.
29. On or about August 23, 2000, at about 2:30 p.m. or shortly thereafter, a van arrived outside Plaintiff's home, occupied by men in plain clothes who stated that they were police officers and that a telephone worker had complained that Plaintiff had threatened him with a rifle.
30. On or about August 23, 2000, at about 2:30 p.m. or shortly thereafter, Plaintiff, speaking to the men in plain clothes from the upstairs window, denied that he had done any such thing, and attempted to explain what had happened. One of the men interrupted and demanded that Plaintiff come outside to talk to them.
31. Upon the demand made by the speaker referred to in the foregoing paragraph, Plaintiff asked the speaker whether he was a state or federal officer, to which the speaker replied, "Both."
32. Plaintiff, believing the speaker to be other than a police officer and also aware of his rights under *Payton v. New York*, refused to leave his home.
33. Over the ensuing twelve hours, Plaintiff's home was surrounded by teams of armed police, Plaintiff's telephone lines were cut, but Plaintiff was allowed to speak by telephone to police.
34. Plaintiff was also allowed to speak to an attorney, Defendant ROBERT SEIDEN, ESQ., (hereinafter, "SEIDEN").
35. SEIDEN, at that time, professed to be acting on Plaintiff's behalf as plaintiff's attorney.
36. Plaintiff acknowledged that SEIDEN was representing him as his attorney.
37. SEIDEN was a willful participant in joint action with the police.
38. Over the ensuing twelve hours, police repeatedly demanded that Plaintiff leave his home and surrender into their custody, during which time Plaintiff repeatedly denied that he had done anything wrong and repeatedly requested that police obtain a warrant for his arrest should they wish to arrest him in his home.
39. Over the ensuing twelve hours, police never obtained an arrest warrant for Plaintiff.

40. In conversations with Defendant ROBERT SEIDEN, ESQ., SEIDEN repeatedly advised Plaintiff that the police were preparing to break down the door and "storm" the house "any minute" and that Plaintiff's wife and infant sons may be hurt if this were to occur.
41. The continued threat of such harm to Plaintiff's family was too great for Plaintiff to bear.
42. After confirming with SEIDEN that SEIDEN, as plaintiff's attorney, would see to it that no illegal searches or seizures occurred, Plaintiff, at or about 2:00 a.m. on August 24, 2002, stepped outside his home and surrendered into police custody.
43. Plaintiff at all times was acting lawfully and within his constitutional rights.
44. Said constitutional rights were so called "clearly established rights."
45. Upon information and belief, at or about August 24, 2000, at about 2:10 a.m. or shortly thereafter, Defendant JOAN P. YALE, under the color of law, acting jointly with the police, entered Plaintiff's home and informed Plaintiff's wife that SEIDEN had "withdrawn" from the case and that Plaintiff would need another criminal defense attorney.
46. Upon information and belief, at or about August 24, 2000, at about 2:10 a.m. or shortly thereafter, numerous members of THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU, including without limitation JOHN DOES No. 2 through 100, entered Plaintiff's home, and seized property, papers and effects, including each and every locked box in the home, and including seizure of the contents of Plaintiff's safe by destructive entry therein.
47. The police entered said home and performed the aforesaid acts without consent.
48. The police entered said home and performed the aforesaid acts without a warrant.
49. The police entered said home and performed the aforesaid acts under non-exigent circumstances.
50. On August 24 and 25, 2000, Plaintiff was involuntarily confined at Nassau University Hospital, then known as Nassau County Medical Center.
51. On August 24, 2000, Plaintiff refused to provide a urine sample to hospital staff.
52. On August 24, 2000, Plaintiff was restrained against his will for refusing to provide said urine sample, and was choked into unconsciousness and threatened with further physical violence by JOHN DOE No. 1, a Nassau County Police paramedic.
53. Said Police paramedic was acting under the color of law, pursuant to his official duties.

54. Subsequent to the events hereinbefore described, Plaintiff was investigated by the State of New York Office of Children and Family Services for alleged maltreatment of his two infant sons on the basis of the events hereinbefore described.

55. Subsequent to the aforementioned, said investigation by the State of New York Office of Children and Family Services has been completed, and said investigation was deemed "Indicated."

56. A finding of "Indicated" creates a permanent record with the State Central Register of the State of the New York Office of Children and Family Services, then known as the New York State Child Abuse and Maltreatment Register (hereinafter, the "Register"), indicating that Plaintiff has been investigated for possible child abuse.

57. As a result of the "indicated finding," plaintiff is listed with the State Central Register of the State of the New York Office of Children and Family Services, then known as the New York State Child Abuse and Maltreatment Register (hereinafter, the "Register"), indicating that Plaintiff has been investigated for possible child abuse.

58. Subsequent to the aforementioned, Plaintiff requested in writing that the record about him in the Register be amended from "Indicated" to "Unfounded Legally Sealed," and gave his reasons therefor in such writings.

59. In a letter dated September 5, 2001, Defendant DAVID R. PETERS wrote to Plaintiff, acknowledging Plaintiff's request, and indicating that an administrative review pursuant to Plaintiff's request would be undertaken. Said letter further noted: "If the record is not amended within 90 days of receiving the request, or if your request is denied after the administrative review, your request will be forwarded to the Bureau of Special Hearings for scheduling of a fair hearing."

60. Up to and including the date of execution of this Complaint, Plaintiff has received no notice that the aforementioned record has been amended, nor any notice of a hearing having been scheduled. Plaintiff has directed additional correspondence on the matter to the Register, most recently on July 24, 2003.

61. On or about January 28, 2003, under an agreement between Plaintiff or his agent and Defendant DENIS DILLON or his agent, all criminal charges against Plaintiff arising out of the events of August 23-24, 2000, were dismissed in satisfaction of a plea of guilty to a

violation, and upon the understanding that all of Plaintiff's papers and property seized from his home, except that specified at the disposition of said charges, would be returned to him.

62. Up to and including the date of the filing of this lawsuit and until the present, Plaintiff has received none of the aforementioned papers and property nor any notice or indication that THE COUNTY OF NASSAU intends ever to return said papers and property to Plaintiff.

63. Plaintiff and his criminal defense attorney have directed additional correspondence on the matter to the office of Defendant DENIS DILLON, most recently on July 23, 2003.

### FIRST CAUSE OF ACTION

64. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

65. Defendants, acting under color of law, have deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments of the Constitution of the United States.

66. As such, Plaintiff demands $100,000,000.00 from defendants THE COUNTY OF NASSAU, THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU, DENIS DILLON, in his official capacity as District Attorney of the County of Nassau, JOAN P. YALE, JOHN DOES No. 1 through 100, and ROBERT SEIDEN, ESQ., jointly and severally.

67. Plaintiff requests punitive damages from SEIDEN in the amount of $15,000,000.00, up to the constitutional maximum, whichever is greater.

68. Plaintiff requests costs, together with attorney's fees and expert fees pursuant to 42 USC §1988.

### SECOND CAUSE OF ACTION

69. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

70. The aforesaid actions of the Nassau County paramedic violated plaintiff's rights under the NYS and federal constitutions.

71. As such, plaintiff has been damaged in the sum of $5,000,000.00 from NASSAU COUNTY

72. Plaintiff requests costs, together with attorney's fees and expert fees pursuant to 42 USC §1988.

**THIRD CAUSE OF ACTION**

73. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.
74. Defendants THE COUNTY OF NASSAU, THE POLICE DEPARTMENT OF THE COUNTY OF NASSAU, DENIS DILLON, in his official capacity as District Attorney of the County of Nassau, JOAN P. YALE, JOHN DOES No. 1 through 100, and ROBERT SEIDEN, ESQ., jointly and severally illegally seized and retained property, personal effects, and papers taken by defendants from plaintiff.
75. Upon information and belief, Defendants NASSAU COUNTY and DENNIS DILLON are in possession of property, personal effects, and papers taken by defendants from plaintiff.
76. Defendants, acting under color of state law, under official policy have deprived and continue to deprive Plaintiff of his rights under the Fifth and Fourteenth Amendments of the Constitution of the United States.
77. Defendants, under NYS Law have converted plaintiff's personal property, papers and personal effects.
78. Defendants, under NYS Law have committed trespass to chattels concerning plaintiff's property, papers and personal effects.
79. As such, plaintiff demands an accounting of all property, personal effects, and papers taken by defendants from plaintiff.
80. Plaintiff demands $100,000.00 as just compensation for the taking of plaintiff's property, papers and personal effects without the return of said property, papers and personal effects.
81. Alternatively, plaintiff demands $30,000.00 as just compensation for the taking of plaintiff's property, papers and personal effects with the immediate return of said property, papers and personal effects.
82. Plaintiff demands replevy of said property, personal effects, and papers, and $30,000.00 as trespass to chattels of said property.
83. Alternatively, plaintiff demands $100,000.00 for conversion of said property.

84. Plaintiff requests punitive damages from SEIDEN in the amount of $300,000.00 up to the constitutional maximum, which ever is greater.
85. Plaintiff requests costs, together with attorney's fees and expert fees pursuant to 42 USC §1988.

### FOURTH CAUSE OF ACTION

86. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.
87. Defendants JOHN A. JOHNSON, in his official capacity as Commissioner of the State of New York Office of Children and Family Services, DAVID R. PETERS, in his official capacity as Director of the State Central Register of the State of the New York Office of Children and Family Services, acting under color of state law, under official policy, have deprived and continue to deprive Plaintiff of his rights under the First, Second, Sixth, Eighth and Fourteenth Amendments of the Constitution of the United States.
88. Defendants JOHN A. JOHNSON, in his official capacity as Commissioner of the State of New York Office of Children and Family Services, DAVID R. PETERS, in his official capacity as Director of the State Central Register of the State of the New York Office of Children and Family Services, acting under color of state law, under official policy, have violated and continued to deprive plaintiff of his liberty interests under the Constitution of the United States.
89. Plaintiff has a protectable liberty interest in his name not being on "The Register."
90. The US Court of Appeals for the Second Circuit, in 1994, held unconstitutional the NYS statutory scheme whereby persons are listed on "The Register".
91. JOHNSON and PETERS knew or should have known that The US Court of Appeals for the Second Circuit has already declared unconstitutional the NYS statutory scheme whereby persons are listed on "The Register".
92. Plaintiff requests a declaratory judgment from this court that the placement of plaintiff's name on "The Register" is unconstitutional.
93. Plaintiff requests that this court enjoin defendants JOHN A. JOHNSON in his official capacity as Commissioner of the State of New York Office of Children and Family Services, and DAVID R. PETERS, in his official capacity as Director of the State Central Register of

the State of the New York Office of Children and Family Services from listing plaintiff's name on "The Register".

94. Plaintiff requests an Order of this court expunging all records concerning plaintiff from the files of State of New York Office of Children and Family Services and from the State Central Register of the State of the New York Office of Children and Family Services.

95. Plaintiff requests costs, together with attorney's fees and expert fees pursuant to 42 USC §1988.

### FIFTH CAUSE OF ACTION

96. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

97. Defendant SEIDEN breached his fiduciary and legal obligations to plaintiff under the New York State Code of Professional Conduct.

98. Defendant SEIDEN breached his common law fiduciary duty to plaintiff.

99. Defendant SEIDEN's breaches of said fiduciary and legal obligations to plaintiff were intentional.

100. As such, plaintiff demands $5,000,000.00 from defendant SEIDEN.for this cause of action.

101. Plaintiff requests punitive damages from SEIDEN in the amount of $15,000,000.00 up to the constitutional maximum, which ever is greater.

WHEREFORE, Plaintiff respectfully requests that this Court grant the relief requested above in its entirety and for such other, further, and different relief as this Court may deem just and proper.

Plaintiff demands a jury trial.

Dated: New York, New York
December 10, 2003

_____
Victor M. Serby, Esq. [VS-4606]
Attorney for Plaintiff
Empire State Building
350 Fifth Avenue, Suite 6305
New York, NY 10118
Tel. 212-760-0111
e-mail: serbyv@bellatlantic.net