UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
JAMES M. MALONEY,

                        Plaintiff,

        -against-                              **MEMORANDUM AND ORDER**

THE COUNTY OF NASSAU, THE POLICE               03-CV-4178 (SLT)(MLO)
DEPARTMENT OF THE COUNTY OF NASSAU,
DENIS DILLON, in his official capacity as District
Attorney of the County of Nassau, JOAN P. YALE,
ROBERT SEIDEN, ESQ., JOHN A. JOHNSON,
in his official capacity as Commissioner of the State of
New York Office of Children and Family Services,
DAVID R. PETERS, in his official capacity as
Director of the State Central Register of the State of
New York Office of Children and Family Services,
and JOHN DOES No. 1 through 100,

                        Defendants
----------------------------------------------------------------------x
**TOWNES, United States District Judge:**

       In a Memorandum and Order dated September 24, 2007, and filed September 25, 2007 (the "Memorandum and Order"), this Court (1) granted the motion of defendants John A. Johnson and David R. Peters (collectively, the "State Defendants") to dismiss the cause of action against them for failure to state a claim, and (2) dismissed "all claims" against the County of Nassau and the Police Department of the County of Nassau. *See Maloney v. County of Nassau*, No. 03-CV-4178 (SLT)(MLO), 2007 WL 2815811 (E.D.N.Y. Sept. 25, 2007). Plaintiff James M. Maloney and defendant Robert Seiden now separately move for reconsideration of portions of that Memorandum and Order. As explained below, plaintiff's motion for reconsideration, which initially sought to reinstate plaintiff's claims for declaratory and injunctive relief against the State Defendants, has been rendered largely moot by a September 22, 2008, decision of the New York State Office of Children and Family Services' Bureau of Special Hearings, which granted plaintiff the declaratory and injunctive relief he sought in his cause of action against the

State Defendants. Those arguments which plaintiff claims are not moot are without merit. Accordingly, plaintiff's motion for reconsideration is denied, and plaintiff's request that this Court enter final judgment against the State Defendants pursuant to Fed. R. Civ. P. 54(b) is denied without prejudice. Defendant Seiden's motion, which seeks to clarify that this Court meant to dismiss only plaintiff's actions against the State Defendants and not Mr. Seiden's crossclaims against those defendants, is granted.

## BACKGROUND

The facts and procedural history relating to this action are set forth in the Memorandum and Order, familiarity with which is assumed. However, for the convenience of the reader, this Court will provide a synopsis of the undisputed facts relating to the instant motions for reconsideration.

This action arises from an August 2000 incident in which officers from the Nassau County Police Department surrounded plaintiff's Port Washington home after a telephone lineman allegedly reported that plaintiff had pointed a rifle at him from inside the home. A twelve-hour standoff ensued, during which Mr. Seiden and others attempted to persuade plaintiff to accede to police demands that he exit his house and surrender. Plaintiff eventually did so and was thereafter charged with criminal offenses.

The Nassau County District Attorney's Office subsequently permitted plaintiff to plead guilty to disorderly conduct (a violation) in full satisfaction of the charges against him. However, because plaintiff's two young sons had been home at the time of the standoff, the New York State Office of Children and Family Services ("OCFS") investigated plaintiff for possible child abuse and determined that child abuse was "indicated," causing plaintiff to be listed on the New York State Child Abuse and Maltreatment Register ("the Register"). When plaintiff

2

subsequently requested that OCFS amend its records by changing "indicated" to "unfounded – legally sealed," David R. Peters, the Director of the Register, responded by sending plaintiff a letter which stated, among other things:

> If the record is not amended within 90 days of receiving the request, or if your request is denied after the administrative review, your request will be forwarded to the Bureau of Special Hearings for the scheduling of a fair hearing.

### *Plaintiff's Claim against the State Defendants*

Approximately two years later, when plaintiff had yet to receive the "fair hearing" promised by Peters, plaintiff commenced this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), naming both Peters and John A. Johnson, the Commissioner of OCFS, as defendants. In plaintiff's Amended Complaint, the lone cause of action against these two defendants – the fourth cause of action – alleged that Peters and Johnson had deprived plaintiff of "his rights under the First, Second, Sixth, Eighth and Fourteenth Amendments" of the United States Constitution (Amended Complaint at ¶ 87). The Amended Complaint did not expressly state the basis for these First, Second, Sixth and Eighth Amendment claims, but specifically alleged that plaintiff had "a protectable liberty interest in his name not being on 'The Register'" and that Johnson and Peters, acting under color of state law and under official policy, had "deprive[d] plaintiff of his liberty interests" (*Id*. at ¶¶ 88-89). In addition, the Amended Complaint alleged that the Second Circuit had "held unconstitutional the NYS statutory scheme whereby persons are listed on 'The Register,'" and that Johnson and Peters "knew or should have known" of this ruling (*Id*. at ¶¶ 90-91). The fourth cause of action did not seek damages from Johnson or Peters, but sought a declaratory judgment stating that the Register is unconstitutional, an injunction prohibiting Johnson and Peters from listing plaintiff's name on the Register, and an order

expunging all records concerning plaintiff from the files of the OCFS and the Register (*Id*. at ¶¶ 92-94).

Johnson and Peters (collectively, the "State Defendants") subsequently moved to dismiss the sole cause of action against them pursuant to Fed. R. Civ. P. 12(b)(6), advancing four arguments. First, they argued that plaintiff was collaterally estopped from arguing that the State Defendants violated plaintiff's rights to procedural due process because plaintiff refused to take part in the "fair hearing" belatedly offered by OCFS. Second, the State Defendants argued that plaintiff was not entitled to procedural due process because he lacked a protectable liberty interest. Third, these defendants argued that they did not violate plaintiff's right to procedural due process because, in conducting their administrative review, they did not apply the "some credible evidence" standard which was found unconstitutional in *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1981). Fourth, the State Defendants contended that plaintiff's § 1983 claims should be dismissed for lack of subject-matter jurisdiction because such claims could have been meaningfully addressed in proceedings pursuant to Article 78 of New York's Civil Practice Law and Rules.

This Court rejected the State Defendants' first argument, but agreed with their second argument, holding that the allegations in plaintiff's Amended Complaint failed to make out the first element of a procedural due process claim: a violation of a constitutionally protected interest. This Court inferred from plaintiff's conclusory assertion that he had "a protectable liberty interest in his name not being on 'The Register'" (Amended Complaint at 90), that plaintiff was raising a stigma-plus liberty interest claim. However, the Amended Complaint did not contain any factual allegations suggesting that plaintiff had a plausible basis for a procedural due process claim. Although this Court noted that plaintiff's opposition papers "contain[ed] new

4

factual allegations which might arguably support a stigma-plus claim" (*Maloney*, 2007 WL 2815811, at *20), plaintiff had not moved to amend his pleading and this Court could consider only the allegations in the pleading itself in deciding the State Defendants' Rule 12(b)(6) motion. Accordingly, this Court concluded, in light of *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544, ___, 127 S.Ct. 1955, 1974 (2007), that plaintiff's Amended Complaint, which contained nothing more than a conclusory statement suggesting the theory of his procedural due process claim, was insufficient to provide notice of his stigma-plus liberty interest claim.

Since this Court thus held that the allegations in plaintiff's Amended Complaint failed to make out the first element of a procedural due process claim, it was unnecessary to address the State Defendants' final two arguments, both of which dealt with the third element of a procedural due process claim: whether the deprivation of a property or liberty interest occurred without constitutionally adequate pre- or post-deprivation process. However, this Court noted that if it "were to address these arguments, it would determine that the facts alleged by plaintiff [did] not make out this third element of a due process claim" (*Maloney*, 2007 WL 2815811, at *21). With respect to the State Defendants' third argument, this Court noted that, despite plaintiff's allusion to a Second Circuit case which "held unconstitutional the NYS statutory scheme whereby persons are listed on the register" (Amended Complaint at ¶ 90), the Second Circuit actually held only that use of the "some credible evidence" standard in making the initial determination of whether to include someone on the Register created an unacceptably high risk of error. (*Maloney*, 2007 WL 2815811, at *21 (citing *Valmonte*, 18 F.3d at 1003-04)). This Court further noted that the Amended Complaint did "not specifically allege that the State

Defendants used this standard in deciding to include plaintiff on the Register" (*id*.), and that it did not appear likely that plaintiff could allege facts raising this issue. This Court stated:

> [I]n light of the letter from defendant Peters to plaintiff, dated October 2, 2002, which indicates that a "fair preponderance of the evidence" standard was used in plaintiff's case, plaintiff would appear to lack a good-faith basis for asserting that these defendants applied the constitutionally inadequate "some credible evidence" standard.

(*Id*.).

With respect to the State Defendants' fourth argument, this Court found that plaintiff had a meaningful postdeprivation remedy. This Court noted that the factual allegations in the Amended Complaint indicated that plaintiff was complaining about defendant Peters' failure to timely schedule the "fair hearing" to which plaintiff was entitled under New York law. This Court agreed with the State Defendants' contention that plaintiff could have sought a writ of mandamus pursuant to Article 78 of New York Civil Practice Law and Rules, and that plaintiff therefore had a meaningful postdeprivation remedy for Peters' inaction (*Id*. at *21).

### *Plaintiff's Claims Against the County Defendants*

Plaintiff's Amended Complaint also contained three causes of action against Nassau County, its police department and/or its employees. The first cause of action alleged, *inter alia*, that Nassau County, Nassau County District Attorney Denis Dillon, the Nassau County Police Department and its employees "deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments" of the United States Constitution (Amended Complaint at ¶ 65). The second cause of action alleged that the actions of a Nassau County paramedic violated plaintiff's "rights under the NYS and federal constitutions" (*Id*. at ¶ 70). Plaintiff's third cause of action alleged, *inter alia*, that Nassau County, Nassau County District Attorney Denis Dillon, the Nassau County Police Department and its employees "jointly and severally illegally seized and retained

6

property, personal effects, and papers taken by defendants from plaintiff" and thereby deprived plaintiff of his rights under the Fifth and Fourteenth Amendments of the federal Constitution. (*Id*. at ¶¶ 74, 76). In addition, plaintiff alleged that these defendants' actions constituted conversion and "trespass to chattels" under New York State law. (*Id*. at ¶¶ 77-78).

Nassau County and the Nassau County Police Department, together with other "County Defendants," moved to dismiss plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(c). First, the County Defendants moved to dismiss plaintiff's §1983 claims on the ground that plaintiff could not make out a violation of any of his federal Constitutional rights. Second, the County Defendants argued that the §1983 claims against Nassau County and the Nassau County Police Department should be dismissed because plaintiff did not allege that the Constitutional violations were due to a municipal policy. Third, these defendants argued that plaintiff's state-law claims were barred because plaintiff had not filed a notice of claim, as required under New York General Municipal Law. Finally, the County Defendants argued that the individually named County Defendants enjoyed qualified immunity.

This Court rejected the first argument, but found merit in the County Defendants' argument that plaintiff had not adequately alleged the existence of a municipal policy or custom that gave rise to the purported Constitutional violations. On the basis of this finding, the Court dismissed "plaintiff's claims against Nassau County and the Nassau County Police Department." (*Maloney*, 2007 WL 2815811, at *10). This Court also found merit in the County Defendants' third argument, holding that plaintiff failed to file the notice of claim necessary to bring an action against the County Defendants. Accordingly, the Court ruled that "all of plaintiff's pendent state claims against the County Defendants" were dismissed. (*Id*., at *12).

*Motions for Reconsideration*

Both defendant Seiden and Plaintiff now move for reconsideration of portions of the Memorandum and Order. Defendant Seiden notes that the "Conclusion" section of the Memorandum and Order did not adequately reflect this Court's rulings with respect to the County Defendants. Although those rulings specifically stated that the Court was dismissing "plaintiff's claims" against those defendants, the Court's conclusion stated:

> [T]hose portions of the County Defendants' motion which seek (1) to dismiss *all* claims against defendants County of Nassau and the Police Department of the County of Nassau and (2) to dismiss *all* pendent State claims against the County Defendants are granted. Accordingly, defendants County of Nassau and the Police Department of the County of Nassau are hereby dismissed from this action.

(*Id.*, at *21 (emphasis added)). Defendant Seiden notes that this broad language would encompass his counterclaims against Nassau County and the Nassau County Police Department, even though the County Defendants made no arguments to dismiss these counterclaims.

Plaintiff moves for reconsideration of that portion of the Memorandum and Order which dismissed the fourth cause of action in the Amended Complaint. As originally filed, plaintiff's motion for reconsideration raised five issues, the first two of which challenged this Court's conclusion that plaintiff had failed to adequately allege a stigma-plus liberty interest claim. First, plaintiff questioned the applicability of *Twombly*, characterizing the case as articulating "a new pleading standard" and implying that such standard should not be applied retroactively to plaintiff's Amended Complaint, which was drafted four years before *Twombly* was decided. Second, plaintiff faulted this Court for failing to grant, *sua sponte*, leave to amend the stigma-plus claim to add factual allegations contained in plaintiff's opposition papers, even after recognizing that those allegations "might arguably support a stigma-plus claim."

8

The third argument raised in plaintiff's motion for reconsideration related to this Court's conclusion that plaintiff did not and could not plead a Constitutional violation under *Valmonte* because there was no evidence that the State Defendants had applied the constitutionally inadequate "some credible evidence" standard. Plaintiff interpreted this Court's observation that "plaintiff would appear to lack a good faith basis for asserting that these defendants applied the ... 'some credible evidence' standard" as somehow implying that plaintiff had acted in bad faith. Plaintiff further assumed that the above-quoted observation was based on two improper factual findings: that plaintiff had received defendant Peter's October 2, 2002, letter, and that Peter's letter accurately reported the standard of review which the OCFS had employed.

Plaintiff's fourth argument related to this Court's conclusion that plaintiff could bring an Article 78 action in the nature of mandamus if the OCFS failed to timely schedule a fair hearing. In making this argument, plaintiff principally relied on *Finch v. New York State Office of Children and Family Servs.*, 499 F. Supp. 2d 521 (S.D.N.Y. 2007), which held, ostensibly for the first time, that inordinate delays in scheduling a "fair hearing" could constitute a due process violation. Plaintiff reasoned that because there was no clearly established constitutional right to a timely hearing and because New York Social Services Law § 422 does not specify a time frame within which a "fair hearing" must be held, an Article 78 proceeding would have proved futile.

Finally, plaintiff faulted this Court for failing to specify that the dismissal of the fourth cause of action was not "on the merits." Plaintiff was apparently concerned that, absent such language, the State might argue that this Court's ruling precluded it from affording plaintiff any relief following the "fair hearing."

9

The latter concern proved baseless in September 2008 when, following the "fair hearing," the OCFS's Bureau of Special Hearings granted plaintiff much of the relief he sought in the fourth cause of action. By letter dated September 26, 2008, plaintiff's counsel informed this Court of the Bureau of Special Hearings' ruling and conceded that the ruling rendered his motion for reconsideration largely moot (Letter to Hon. Sandra L. Townes from Victor M. Serby, Esq., dated Sept. 26, 2008, at 1). However, plaintiff continued to request "(1) a finding that plaintiff did not 'lack a good faith basis for asserting that [the State] defendants applied the constitutionally inadequate 'some credible evidence' standard ... and (2) a ruling that this Court's prior dismissal as against the State Defendant [was] not 'on the merits'" (*Id*. at 2). With respect to the latter request, plaintiff asserted that if the Court's ruling were to stand, "the determination of the Bureau of Special Hearings, which was rendered subsequently, may be rendered moot" (*Id*.).

## DISCUSSION

### *The Rule 60(b) Standard*

Rule 60(b) of the Federal Rules of Civil Procedure "sets forth the grounds on which a court, in its discretion, can rescind or amend a final judgment or order." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). This subsection provides, in pertinent part, that

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ... (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, ...; or (6) any other reason justifying relief from the operation of the judgment.

In this district, the procedure for bringing a motion for reconsideration pursuant to Rule 60(b) is contained in Local Civil Rule 6.3, which requires a moving party to file a "memorandum setting

forth concisely the matters or controlling decisions which counsel believes the court has overlooked."

Although a motion for reconsideration is "addressed to the sound discretion of the district court," Rule 60(b) "allows extraordinary judicial relief" and "is invoked only upon a showing of exceptional circumstances." *Nemaizer*, 793 F.2d at 61. Accordingly, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing cases). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*, No. 03 Civ. 5429 (RJS), 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001)). Rather, such a motion "may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Morales v. Quintiles Transnational Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998) (quoting *Enzo Biochem, Inc. v. Johnson & Johnson*, 866 F.Supp. 122, 123 (S.D.N.Y. 1994)).

### *Plaintiff's Motion for Reconsideration*

In moving for reconsideration of the Memorandum and Order, plaintiff does not identify controlling decisions or data that the court overlooked, much less demonstrate that the overlooked matters or controlling decisions materially influenced this Court's earlier decision. Rather, plaintiff introduces entirely new facts and caselaw in an effort to have this Court re-write portions of its decision which will have no effect on the outcome of the case. Accordingly,

plaintiff's motion does not make out the "exceptional circumstances" necessary to justify Rule 60(b) relief. *See Nemaizer*, 793 F.2d at 61.

First, plaintiff misinterprets this Court's statement that "plaintiff would appear to lack a good-faith basis for asserting that [the State Defendants] applied the constitutionally inadequate 'some credible evidence' standard." *Maloney*, 2007 WL 2815811, at *21. This Court did not mean to imply that plaintiff was acting in bad faith. Indeed, this Court found that the Amended Complaint did "*not* specifically allege that the State Defendants used [the 'some credible evidence' standard] in deciding to include plaintiff on the Register." *Id*. (emphasis added). In making the statement to which plaintiff now objects, this Court was merely explaining why it was not prepared, *sua sponte*, to grant plaintiff leave to re-plead in an effort to allege that the State Defendants utilized a constitutionally inadequate standard.

In his motion for reconsideration, plaintiff argues that he had a "good faith basis" for alleging that the State Defendants used the "some credible evidence" standard in deciding to keep him on the Register. However, in support of this argument, plaintiff does not point to controlling decisions or data which this Court may have overlooked. First, plaintiff cites to two decisions authored by District Judge Scheindlin of the Southern District of New York – *Finch v. City of New York*, 455 F. Supp. 2d 521 (S.D.N.Y. 2007), and *Finch v. City of New York*, No. 04 Civ. 4434 (SAS), 2008 WL 2484186 (S.D.N.Y. Jun. 19, 2008) – neither of which is controlling upon this Court and neither of which was mentioned in plaintiff's papers in opposition to the motions to dismiss. Second, plaintiff relies on a declaration from one Roberta Frederick, dated August 12, 2004 (the "Frederick Declaration"), which was apparently presented to Judge Scheindlin, but was not previously presented to this Court.

Even if the *Finch* cases or the Frederick Declaration had been previously presented to this Court, they would not have discredited the representation, contained in defendant Peters' October 2, 2002, letter, that the State utilized a "fair preponderance of the evidence" standard in performing its administrative review in response to plaintiff's request to amend the Register. Indeed, Judge Scheindlin's 2007 opinion indicates that, notwithstanding the provisions of New York Social Services Law § 422(8)(a)(ii) (dictating use of the "some credible evidence" standard), New York State uses a "fair preponderance of the evidence" standard in addressing requests to amend and seal reports of abuse. *See Finch*, 499 F. Supp. 2d at 527. Specifically, Judge Scheindlin described the State's (or "SCR's") process for dealing with requests to amend and seal reports as follows:

> Upon receipt of a request to amend an indicated report that was investigated by the ACS [Administration for Children's Services, or other agency established by a local social services district], the SCR sends a request to the ACS for all records, reports and other information maintained by the ACS pertaining to the indicated report. The ACS forwards all records, reports and other information it maintains regarding the indicated report to the SCR. The SCR reviews all such materials in its possession concerning the indicated report and, after affording the ACS a reasonable opportunity to present its views, determines whether there is *a fair preponderance of the evidence* to find that the subject committed the act or acts of child abuse or maltreatment giving rise to the indicated report.

*Id*. (emphasis added). This explanation of the statutory framework is entirely consistent with defendant Peter's claim that the State's decision to deny plaintiff's request to seal or expunge an indicated report was based on a determination "that the report is supported by a fair preponderance of the evidence." Letter from David R. Peters to Mr. Maloney, dated Oct. 2, 2002 (attached as Ex. D to the Declaration of Lori L. Pack, dated Sept. 10, 2004).

Even assuming that plaintiff could establish that this Court overlooked previously presented evidence and that this evidence established that the State Defendants were using the "some credible evidence" standard, that showing would not materially affect this Court's prior decision. In that prior decision, this Court held that plaintiff had failed to make out the first element of his procedural due process claim against the State Defendants, since plaintiff could not establish that he had a constitutionally protected liberty interest in his name not being on the Register. Accordingly, it was unnecessary to address the issue of whether the process that the State Defendants provided was constitutionally adequate. Therefore, this Court's findings that the Amended Complaint did not specifically allege that the State Defendants used the "some credible evidence" standard and that plaintiff did not appear to have a "good faith basis" for making such an allegation were not crucial to this Court's analysis. Even if plaintiff could establish that those findings were incorrect, this Court would nonetheless dismiss plaintiff's claims against the State Defendants on the ground that he failed to establish a protectable liberty interest.

Furthermore, even if plaintiff could show that this Court erred in dismissing the claims against the State Defendants, such a showing would no longer have any effect on the outcome of this case. Plaintiff did not seek money damages from the State Defendants, but sought only a declaratory judgment and certain injunctive relief. The Bureau of Special Hearings has already granted plaintiff the relief he sought by finding that the allegations of maltreatment against him were not established by a fair preponderance of the evidence, by directing that the allegations be marked "unfounded," and by ordering that his records be sealed and that the local child protective agency "take the actions required by SSL § 422(9)." Since plaintiff's claims against

the State Defendants are now moot, the outcome of this action would not be affected by a finding that plaintiff had a viable procedural due process claim against the State Defendants.

### *The Failure to Expressly State that the Dismissal of the State Defendants was not "On the Merits"*

Plaintiff's second argument for reconsideration faults this Court for failing to specify "that this Court's prior dismissal as against the State Defendants was not 'on the merits.'" Serby Letter at 2. Plaintiff correctly notes that, since the prior dismissal was not "for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19," that dismissal will "operate[] as an adjudication on the merits" unless this Court specifies otherwise. Fed. R. Civ. P. 41(a). Plaintiff is apparently concerned that this Court's decision could be used to challenge the Bureau of Special Hearings' subsequent determination that the allegations that plaintiff maltreated his infant sons were not established by a fair preponderance of the evidence.

Plaintiff's argument might have merit had the dismissal of the State Defendants been based solely on a violation of Rule 8(a) of the Federal Rule of Civil Procedure. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (implying that a dismissal based solely on Rule 8(a) is not "on the merits"). However, this Court's Rule 8(a) analysis applied only to the first element of plaintiff's procedural due process claim, in which this Court found that plaintiff had not pled a stigma-plus liberty interest claim. This Court also found that the facts alleged by plaintiff would not make out the third element of a procedural due process claim: that the deprivation of a property or liberty interest occurred without constitutionally adequate pre- or post-deprivation process. *See Maloney*, 2007 WL 2815811, at *21. Specifically, this Court found that the Amended Complaint did not allege that the State Defendants used the "some credible evidence" standard in deciding to include plaintiff on the Register," and that plaintiff, who could have

sought a writ of mandamus pursuant to Article 78 of New York Civil Practice Law and Rules to challenge the State Defendants' failure to schedule a timely hearing, had a meaningful postdeprivation remedy for Peters' actions. *Id*.

Moreover, this Court's failure to expressly state that the dismissal of the State Defendants was not "on the merits" has not had, and will not have, any impact on the outcome of this case. Plaintiff's fear that this Court's decision would be accorded preclusive effect has proven entirely baseless. According to plaintiff himself, on September 22, 2008 – almost one year to the day after this Court dismissed plaintiff's action against the State Defendants – the Bureau of Special Hearings granted plaintiff the very relief plaintiff sought in his action against the State Defendants. Plaintiff does not allege that anyone has appealed the Bureau of Special Hearings' determination, or explain the basis for his belief that "the determination of the Bureau of Special Hearings ... may be rendered moot." Serby Letter at 2, n. 2. Accordingly, even if the dismissal of plaintiff's actions against the State Defendants were not on the merits, there would be no reason to modify the Court's decision at this juncture. Plaintiff's second ground for reconsideration is, therefore, also denied.

### *Plaintiff's Rule 54(b) Request*

Plaintiff requests that, if this Court declines to grant the relief plaintiff seeks, this Court enter a final judgment with respect to the State Defendants alone pursuant to Fed. R. Civ. P. 54(b). Rule 54(b) provides, in pertinent part, that "when more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," but "only upon an express determination that there is no just reason for delay and upon an express direction for the

entry of judgment." Under this rule, a district court functions as a "dispatcher," exercising its discretion "in the interest of sound judicial administration" to "determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

The Supreme Court has expressly declined "to fix or sanction narrow guidelines for the district courts to follow" in exercising their discretion. *Id*., at 10-11. However, the *Curtiss-Wright* Court observed that, "[p]lainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Id*., at 10. The Second Circuit has gone further, stating that "[r]espect for the historic federal policy against piecemeal appeals requires that such a certification not be granted routinely." *L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998) (internal quotations and citations omitted). Indeed, the Second Circuit has repeatedly observed that the power available under Rule 54(b) "should be used only in the infrequent harsh case" where there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Id*. (citing cases).

This not one of those "infrequent harsh case[s]," but a case in which both sound judicial administration and plaintiff's own interests dictate that Rule 54(b) relief be denied. As noted above, plaintiff received substantially all of the relief he sought to obtain from the State Defendants in September 2008, when the Bureau of Special Hearings ruled in his favor. If plaintiff's claims against the State Defendants had not been dismissed, they would now be moot. Accordingly, at this time, it would not be "in the interest of sound judicial administration" to permit plaintiff to bring an appeal seeking to reinstate those claims or to otherwise modify that

17

portion of this Court's Memorandum and Order which dismissed plaintiff's now-moot claims against the State Defendants.

Furthermore, it is not in plaintiff's interests to have this Court enter a final judgment with respect to the State Defendants at this juncture. As previously noted, plaintiff appears to be concerned that this Court's Memorandum and Order could be used as a basis for disturbing the Bureau of Special Hearings' determination. Unless someone appeals the Bureau's determination, however, plaintiff need not appeal this Court's decision. If this Court were now to enter a final judgment with respect to the State Defendants, this Court's action alone might force plaintiff to appeal that judgment before the need to do so arose, just to guard against the possibility that someone might seek to challenge the Bureau's determination at some point in the future.

To save plaintiff the time and expense of appealing, and to prevent the Second Circuit from having to adjudicate a premature or unnecessary appeal, this Court, in its discretion, will deny plaintiff's Rule 54(b) application at this time. However, this ruling is without prejudice to renewing the Rule 54(b) application upon a showing that someone has actually appealed the Bureau of Special Hearings' September 22, 2008, determination. This arrangement should eliminate any "danger of hardship or injustice" to plaintiff.

### *Defendant Seiden's Motion for Reconsideration*

In his motion for reconsideration, defendant Robert Seiden posits that this Court did not intend to dismiss his counterclaim against the Nassau County or its police department, but merely overlooked his counterclaim. Mr. Seiden is correct. The County Defendants never moved to dismiss Mr. Seiden's counterclaim, but sought solely to dismiss plaintiff's claims

18

against them. *See Maloney*, 2007 WL 2815811, at *6 (summarizing the County Defendants' arguments). Although this Court expressly stated that it was dismissing "plaintiff's claims" when it ruled that plaintiff had not alleged that any Constitutional violations were due to policies of Nassau County and the Nassau County Police Department, *id*., at *10, and when it ruled that plaintiff had not filed the notice of claim necessary to bring an action against the County Defendants, *id*., at *12, this Court incorrectly summarized these rulings in the "Conclusion" section of the Memorandum and Order by stating that "*all* claims against defendants County of Nassau and the Police Department of the County of Nassau" were dismissed. *Id.*, at *21 (emphasis added). This Court also incorrectly stated that "defendants County of Nassau and the Police Department of Nassau County [were] ... dismissed from this action," *id*., when, in fact, this Court intended only to grant those defendants' motions to dismiss plaintiff's claims against them.

For these reasons, defendant Seiden's motion for reconsideration is granted. The first paragraph of the "Conclusion" portion of the Memorandum and Order will be amended herewith to read as follows:

> For the reasons stated above, those portions of the County Defendants' motions which seek (1) to dismiss plaintiff's claims against defendants County of Nassau and the Police Department of the County of Nassau and (2) to dismiss plaintiff's pendent State claims against the County Defendants are granted. Those State claims which are brought against the remaining defendants and raised in the Amended Complaint's third cause of action are also dismissed. The County Defendants' motion is denied in all other respects.

19

## *CONCLUSION*

For the reasons set forth above, plaintiff's motion for reconsideration is denied in its entirety. Plaintiff's request that this Court enter final judgment against the State Defendants pursuant to Fed. R. Civ. P. 54(b) is denied, without prejudice to renewing this application upon a showing that someone has appealed the Bureau of Special Hearings' September 22, 2008, determination.

Defendant Robert Seiden's motion for reconsideration is granted and this Court's Memorandum and Order dated September 24, 2007, will be amended as set forth above. The Clerk of Court is directed to modify the docket sheet as necessary to reflect that defendant Seiden's counterclaim against the County of Nassau and the Police Department of the County of Nassau has not been dismissed.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2009
       Brooklyn, New York